## J. W. MARSH, RESPONDENT, v. J. C. TRULLINGER, APPELLANT.

EVIDENCE—ACTION FOR DAMAGES.—In an action for damages for flowing plaintiff by back water, caused by defendant's dam, it is competent for the plaintiff to show the condition of the land flowed, and what it would cost to clear it and put in cultivation.

IDEM.—Plaintiff may prove that his land has been so injured as to impair its future value.

DAMAGES—OVERFLOWING LAND.—Plaintiff may recover damages for injury occasioned by the back water percolating through the soil and rendering his land swampy.

NUISANCE—ABATEMENT OF IN ACTION FOR DAMAGES.—When in an action for a nuisance the plaintiff recovers damages, he may have a warrant to have the nuisance abated.

APPEAL from Washington County.

The facts are stated in the opinion of the court.

*T. H. Tongue, Dolph, Bronaugh, Dolph & Simon,* for appellants.

The case stated in the complaint is that defendant's dam has obstructed the waters of the creek in their natural flow, and caused them to flow back and overflow plaintiff's land.

The court authorized the jury to take into consideration damages, claimed to have resulted from water percolating from the creek underground into the lakes and upon the low lands of plaintiff, between which and the creek there were high ridges of land.

The two cases are entirely different, and a man summoned to answer to the one ought not to be called upon at the trial to meet and refute the other. Whether the water in those lakes and upon those low lands originated or were increased in quantity by percolation from the creek, might be largely matter of opinion; or the question might depend upon the testimony of witnesses familiar with appearances at those localities, both prior and subsequent to the time of the erection of the dam; whilst the question as to what lands were overflowed by back water from the dam was one patent to every observer. Defendant was bound to be prepared with testimony to meet the latter proposition, but to

allow plaintiff to make his case, in whole or in part, upon the former, was to take defendant by surprise, by calling upon him to meet an issue not tendered in the pleadings. (*Edge* v. *Pemberton*, 12 M. & W. 186; *Martin* v. *Gilham*, 7 Adolph & Ellis, 540; *Merle* v. *Hascall*, 10 Mo. 407; *Long* v. *Doxey*, 50 Ind. 385; *Pixley* v. *Clark*, 32 Barb. 268.)

On the trial plaintiff was allowed to introduce testimony against the objections of defendant, to prove the yearly value per acre of the land in question, if cleared and drained; the expense of clearing the uncleared part, and the cost of draining, if the creek had been left in its natural state.

Plaintiff's right to recover should be restricted to the actual loss sustained by him in being deprived of the use of the land in its present condition as wild, timbered, or unimproved land. To allow witnesses to estimate the cost of draining the land and of clearing it up so as to make it fit for cultivation, and then to estimate its probable value per annum thereafter for cultivation, is a violation of the rule against allowing speculative damages. (*McGuire* v. *Grant*, 1 Dutcher, N. J. 356; *Ivey* v. *McQueen*, 17 Ala. 408; *Jones* v. *Gooday*, 8 M. &. W. 146; *Walrath* v. *Redfield*, 11 Barb. 368; *Richardson* v. *Northrup*, 66 Id. 85; *Clark* v. *N. & M. Co.*, 6 Nev. 203.)

It is established by the authorities that a person whose lands are injuriously affected by backwater from a millpond has no right to ask to abate any portion of the height of the dam, except so much only as is necessary to relieve the land from injury. In an action of this character, if the plaintiff designs asking for relief in the nature of abatement, he should take the verdict of the jury as to the proportion of the height of the dam necessary to be removed in order to his relief. This might readily have been done by special verdict, without which, as we submit, there is nothing upon which to base such judgment as was granted by the court below on plaintiff's motion. We think it self-evident that upon a general verdict for damages only, such as was found in this case, plaintiff would have no right to ask the court to tear out the entire dam, and ruin property worth perhaps thousands of dollars, to relieve half a dozen

acres of swamp land from overflow, unless this were abso-
lutely essential for the purpose.    And if the whole dam
may not be destroyed needlessly, neither may any part of
it; and what part is necessary to be removed is a question
directly involved in the case, and one upon which the de-
fendant is as much entitled to have the jury pass as he is
to have them decide upon the *quantum* of damages, before
any judgment is rendered against him.  (Angell on Water-
courses, secs. 389, 390; *Gates* v. *Blincoe*, 2 Dana, 158; *Mof-
fett* v. *Brewer*, 1 Greene, 348; *Heath* v. *Williams*, 25 Maine,
209; *Great Falls Co.* v. *Worster*, 15 N. H. 439; *Wright* v.
*Moore*, 38 Ala. N. S. 593.)

While the overflowing of the land of another by the
erection of a mill-dam without license, has been treated as
the creation of a private nuisance, remediable by action to
abate it, or by suit to enjoin it, yet such erections being
somewhat in the nature of a public benefit, have in many
instances received from legislatures and courts such favor
and privileges as are scarcely consistent with their classifi-
cation as nuisances.   In some of the states laws have been
passed authorizing the condemnation of the lands to be
flowed.  (7 J. J. Marsh, 248; 1 A. K. Marsh, 589, 5 U. S.
D. 399; Mills, secs. 57, 60, 67, 74.)

In 16 Wis. 692, it was held that after long enjoyment of
the privilege by the mill owner, though without legal right,
equity will interfere in his behalf to prevent the destruc-
tion of his water power without which his mill is valueless.
While we have no similar statute in Oregon, and such
equitable feature of the case cannot be considered by this
court on this appeal, yet the fact that such consideration is
elsewhere extended to property of this kind tends to justify
our position that respondent should be jealously limited to
his strict legal rights, and a technical adherence to the
rules of evidence and law should be demanded of him, in
his effort to destroy the value of appellant's mill by cutting
off his water power, in order that opportunity may be
afforded respondent to drain half a dozen acres of natural
marsh.

*T. B. Handley and Catlin & Killen,* for respondent.

The court instructed the jury that if they found that some part of the plaintiff's land mentioned in the complaint, was overflowed or saturated by the water thrown back by the dam, and plaintiff in good faith sought to improve the same, and was prevented by the said water, then the plaintiff is entitled to recover the net value of the use of the land, or what it would have been worth per year had the improvements been made, which the state of the water prevented; but that he was not entitled to recover for the use of the land as if it were improved, unless he attempted to improve it, and was prevented by the wrongful acts of the defendant.

The only triable issue in this cause was the measure of damages, and on this question the rulings of the court on admission of testimony, and the charge to the jury furnished the correct rule. Testimony was properly admitted as to the value of the use of the lands, both in an improved and unimproved condition, and also what was necessary to improve such lands in order to furnish proper data for the jury to estimate the damages sustained by plaintiff. Plaintiff having proved his title to the lands alleged to be injuriously affected by said dam, and the defendants having failed to prove any adverse right to flow said lands, the plaintiff is entitled to nominal damages in any event. (3 Kent, 440; Sedg. on Meas. of Dam. 47.) The order directing the abatement of defendant's dam, was according to the statutory provision in such cases. (Civ. Code, sec. 330.)

By the Court, BOISE, J.:

This action was brought to recover damages for a nuisance and to have the same abated. The plaintiff alleges that he is the owner of land in Washington county, through which a creek, called Dairy Creek, flows; that defendant owns land on said creek below him, and has built and maintains a dam on said creek, which causes the waters of the creek to flow back and overflow his land.

The defendant admits that he maintains the dam to use water to run his mills, and does not deny but that the waters

are thereby made to flow back and overflow the land of the plaintiff, but denies the damage; and by a separate answer claims a right to flow said land by pre-emption, which separate answer is denied by the plaintiff.   On the trial of the case by the court and a jury, the plaintiff offered testimony tending to show the value of the overflowed land for cultivation, how much it would cost to ditch the same so as to drain it, and generally what it would cost to prepare this land for cultivation, and what the use of it would be worth per acre, per year, when so prepared for cultivation.   This testimony was objected to by the defendant as incompetent, but the court overruled this objection and admitted the evidence.   This evidence was offered to show how much the plaintiff had lost by being deprived of the use of his land.

It is claimed that such damages are too remote and speculative, and can afford no proper criterion from which to estimate the damages which the plaintiff had suffered.   We think this evidence was properly admitted.   Suppose this land had been prairie, which only needed to be fenced and plowed to be made ready for grain, and the plaintiff was about to utilize it in that way, and was prevented by this act of the defendant, in causing the water to flow over it. There can be no question but plaintiff could show what the land would have been worth to him, and to estimate this value properly, the jury could take into consideration the condition of the land.   There is no way to show the value of the use of land, except to show its condition, and the expense of putting it in a condition to be used, if any such expense is necessary, and whatever expense is necessary would abstract from its value and lessen the damages, and be beneficial for the defendant.   And evidence tending to show impediments to the easy utilization of the land might be offered by the defendant to mitigate the damages.

We think also that it was competent for plaintiff to show to the jury that the flowage had so injured the land that it would impair its future fertility.   It is also claimed that it was error to allow plaintiff as to costs of draining this land, because there was no allegation in the complaint that

plaintiff was injured by the water percolating through the
soil and making it wet and swampy.

The complaint says that the dam of the defendant causes
the water to flow back and overflow, and this is not denied,
so it is admitted that this water did flow back and overflow
the plaintiff's land, but it is denied that said flowage was
any damage.   To ascertain the damage it was proper for the
condition of this land to be given to the jury, whether it
was naturally dry or swampy.   If it had been dry, the
plaintiff could have used it without draining; if swampy, he
could show the jury that he could have drained it and made
it available had it not been for the flowage.   It might be
that little expense would have been sufficient to put it in
condition for cultivation, and the land been very valuable
had the flowage not interfered.   And when the jury were
advised by the testimony as to the expense of draining and
cleaning this land they could form an intelligent judgment
of the amount of damage the plaintiff had sustained in be-
ing deprived of its use.

It was insisted by the defendant in the circuit court that
the plaintiff could not recover under the pleadings in this
case for any damages caused by the back flow of the water,
unless it was high enough to overflow the banks of the creek;
that is, if the back water caused the water to percolate
through the soil and render it wet and swampy, such injury
could not be considered by the jury, and defendant excepted
to an instruction of the court, submitting this matter to the
jury.

The complaint alleges that the damages were caused by
the dam of defendant, causing the water of the creek to flow
back and over the land of the plaintiff, and this allegation
is not denied by the owner and therefore must be taken as
confessed; and this allegation is broad enough to include
any damages which is caused to the land by the flowing
back of the water.   And we think the instruction to the jury,
directing them to estimate the injury, if any, in considering
the damages, was correct.   There is error alleged in the
proceeding of the court on the motion of the plaintiff to have
the dam abated.

The jury found that this dam was a nuisance to the plaintiff, and had allowed him damages. When in a case of this kind the jury so find, and the plaintiff recovers damages for the nuisance, the statute, section 330, p. 179, provides that in addition to the execution to enforce the judgment for damages, the plaintiff may, on motion, have an order allowing a warrant to issue to the sheriff to abate the nuisance. And in this case there being no issue to the jury as to what particular part of the dam caused the nuisance, the verdict simply establishes the fact that the dam was a nuisance to the plaintiff. If the defendant desired to show as a fact that the plaintiff's land would be restored to its normal condition by the removal of a part of the dam, he should have pleaded that fact in his answer, and if denied by the plaintiff, the jury could have determined that fact by their verdict. But the issue was whether the dam was a nuisance and that fact being established by the verdict, the statute has given the plaintiff a right to a warrant to have it abated.

There being no error found in this case, the judgment of the court will be affirmed.